RECORD NO. 21-1396(L) and 21-1397

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

CHARLES WILLIS SHORT, individually and as Administrator of the Estate of VICTORIA CHRISTINE SHORT,

                        Appellant

vs.

J.D. HARTMAN, SHERIFF OF DAVIE COUNTY, in his individual and official capacity; ANDREW C. STOKES, SHERIFF of DAVIE COUNTY in his individual and official capacity; CAMERON SLOAN, CAPTAIN, Chief Jailer with the Davie County Sherriff's Department, in his individual and official capacity; DANA RECKTENWALD, LIEUTENANT, Operations Supervisor of the Detention Center with the Davie County Sheriff's Department, in her individual and official capacity; TERESA MORGAN a/k/a TERESA M. GODBEY, SERGEANT Jailer-Detention Officer with the Davie County Sheriff's Department, in her individual and official capacity; CRYSTAL MEADOWS, SERGEANT Detention Officer with the Davie County Sheriff's Department in her individual and official capacity; MATTHEW TRAVIS BOGER, Jailer-Detention Officer with the Davie County Sherriff's Department, in his individual and official capacity; and WESTERN SURETY COMPANY,

                        Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
_____

**REPLY BRIEF OF APPELLANT
CHARLES WILLIS SHORT**
_____

W. Ellis Boyle, Esquire
Knott & Boyle, PLLC
4800 Six Forks Road, Suite 100
Raleigh, NC 27609
(919)783-5900
ellis@knottboyle.com
*Counsel for Appellant*

**TABLE OF CONTENTS**

Page

Table of Cases and Authorities........................ii

Argument..............................................1

    Plaintiff Provided Plenty of Notice Pleading......4

    Plaintiff Satisfied All 3 Prongs of
    Deliberate Indifference Test......................6

    Overt Suicide Risk Is An Objectionable
    Serious Medical Need.............................10

    Other Medical Care At The Jail Does Not
    Excuse Sgt. Morgan's Acts........................12

Conclusion...........................................16

Certificate of Compliance............................17

Certificate of Service...............................17

**TABLE OF CASES AND AUTHORITIES**

Page

**CASES**

Ashcroft v. Iqbal, 556 U.S. 662, 680,
    129 S. Ct. 1937, 1951 (2009)........................1

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554,
    127 S. Ct. 1955, 1965 (2007).....................1, 4

Booker v. S.C. Dep't of Corr.,
    855 F.3d 533, 546 (4th Cir. 2017)...................8

Brown v. Harris,
    240 F.3d 383, 389 (4th Cir. 2001)..................12

Elliott v. Cheshire County,
    940 F.2d 7, 10-11 (1st Cir.1991)...................12

Estelle v. Gamble,
    429 U.S. at 104, 97 S.Ct. at 291...................11

Farmer v. Brennan, 511 U.S. 825, 837,
    114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)......7, 10, 12

Gordon v. Kidd,
    971 F.2d 1087, 1095 (4th Cir. 1992).........7, 10, 12

Grayson v. Peed,
    195 F.3d 692, 695 (4th Cir. 1999)................5, 7

Iko v. Shreve,
    240 F.3d 383, 389 (4th Cir. 2001)..................15

Mays v. Sprinkle,
    992 F.3d 295, 305 (4th Cir. 2021)...................5

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,
    591 F.3d 250, 253 (4th Cir. 2009)................4, 5


**STATUTES**

42 U.S.C. 1983..........................................1

**ARGUMENT**

Plaintiff pleaded sufficient allegations in his Amended Complaint to defeat Defendants' 12(c) motion. When taken in the light most favorable to Plaintiff, as the trial court should have done but did not, Plaintiff provided more than adequate allegations about Sgt. Morgan's actions and inactions to survive any motion to dismiss at the pleadings phase. He did not just barely skim over the bar. Thus, this Court should reverse the District Court's erroneous dismissal of Plaintiff's § 1983 claims against Sgt. Morgan in her individual capacity and the Sheriff's Department in its official capacity, and also consider the state claims against all other Defendants.

In their brief, Defendants mischaracterize Plaintiff's Amended Complaint as a collage of unconnected, independent actions by strangers thrown together in an assortment of claims and causes of action. Defendants' distortions could not be farther from the truth. Plaintiff presented 76 pages of well pleaded facts and legal claims which walk the Court through the constitutional claims and associated state law claims. Defendants knew exactly what Plaintiff alleged they did wrong. Plaintiff fully satisfied the requirements of pleading, even under Iqbal and Twombly.

Even more compelling, now –after exploring all of the evidence in discovery Plaintiff actually delivered. In his summary judgment brief, Plaintiff produced admissible evidence to prove those

allegations to the Jury. That information sat before the trial court, basically on top of the inbox filed only a month prior, when the trial court dug down into the stack of papers to pull out the motion to compel from the bottom. So instead of considering the substance and admissible evidence freshly presented, the trial court wiped the dust off a stale pleadings motion filed over a year prior and ignored the admissible evidence sitting right there. Plaintiff should not only survive this obsolete pleading motion, but should defeat summary judgment and proceed to trial for a Jury to decide.

Sgt. Morgan has now testified, without question, that:

1) Ms. Short told her that Ms. Short had been hospitalized due to an attempted suicide "last month;" (App. pp. 1402 & 1404).

2) She perceived that Ms. Short was under the influence of, or withdrawing from, drugs; (App. p. 1412).

3) Sgt. Morgan was the first Jail employee to assess Ms. Short's medical and mental health situation;[1] (App. pp. 1395-197, 1404-1406).

4) Sgt. Morgan failed to complete a basic mental health screening form; (App. pp. 1395-1397, 1405-1408).

5) Sgt. Morgan should have called a qualified mental health professional ("QMHP") and the nurse to alert both of them of the

---

[1] The nurses did not work at night and this happened around 1 or 2 am in the morning.

2

obvious presence of easily defined and understood suicide risk factors that Ms. Short displayed; (App. pp. 1396, 1408-1409).

6) Sgt. Morgan should have placed Ms. Short on suicide watch; and (App. pp. 1399-1400, 1408, 1410).

7) Sgt. Morgan should have alerted the staff working with her that night and the oncoming shift that started the next morning, and the Jail management team about Ms. Short's suicide risks and need for suicide watch. (App. 1412-1415).

Tragically, this situation was easy to avoid. She should have done all of these things, but all she had to do was any one of them. If Sgt. Morgan had completed a one-page mental health questionnaire properly, picked up the phone and called the QMHP or even the nurse, or put Ms. Short on suicide watch until the rest of the Jail's mental health screening and diagnosis process unfolded, as required by policy and practice, Plaintiff would not have committed suicide as she did. For unexplained, and truly inexcusable, reasons she chose to just ignore these facts and do nothing. Unsurprisingly, after Sgt. Morgan derailed the system from the start, it failed on down the line, too. Eventually, these cascading failures led to Ms. Short hanging herself about a day later while sitting alone for more than 30 minutes at a time in an isolation hallway with the sheet that the Jail gave her.

Sgt. Morgan erroneously claims that a nurse's potential separate negligence later in time wipes away her errors.

Sgt. Morgan struck a match and lit the fuse leading to this explosive situation when she failed to do the right thing during intake or shift change. She cannot complain that someone else failed to snuff out the burning fuse later, before it exploded, to excuse her own actions and inactions.

If anything, Sgt. Morgan hid her burning fuse of improper acts and inactions from the nurse and everyone else at the Jail by not filling out the forms or telling anyone about her knowledge of Plaintiff's suicide risks. An actual analogy of what occurred here would be that Sgt. Morgan lit her fuse, hid it from everyone's view, and then the nurse may have lit a second, different fuse later. Both of their separate negligence caused this problem independently. Neither can say that they relied on the actions of the other one when they lit their own separate fuse.

**Plaintiff Provided Plenty of Notice Pleading.**

Contrary to Defendants' arguments, Plaintiff needed only to show that the Amended Complaint provided Sgt. Morgan with notice of the claim asserted, and supply enough factual matter, which must be taken as true, to plausibly suggest a claim exists. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554, 127 S. Ct. 1955, 1965 (2007). In deciding that a complaint alleges a plausible claim, a court must accept all well-pled facts as true and draw all reasonable inferences in favor of the plaintiff. Nemet

Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

In Mays v. Sprinkle, 992 F.3d 295, 305 (4th Cir. 2021), this Court overturned the Rule 12 dismissal of an inmate's claim for violation of his civil rights that killed him. The Mays defendants relied on an argument about deliberate indifference from Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). The Mays Court rejected that comparison because the summary judgment standard used in Grayson is different than the Rule 12 standard.[2] The Court correctly reversed because the District Court failed to draw all inferences in plaintiff's favor. Mays 992 F.3d at 305. Similarly, this Court should reverse because the District Court failed to draw all inferences in Plaintiff's favor as Rule 12 required.

Plaintiff's Amended Complaint states a claim against Sgt. Morgan which, on its face, provided plausible factual content to allow the District Court to draw the reasonable inference that Sgt. Morgan knew about and ignored the dangers which made her deliberately indifferent to Ms. Short's constitutional rights.

Paragraphs 62 through 67 in the Amended Complaint go far beyond mere notice pleading. (App. pp. 151-154). Plaintiff walks the Court through Sgt. Morgan's initial intake including the

---

[2] Most if not all, of the cases Defendants cited in their response brief deal with a case at summary judgment, not Rule 12. Summary judgment jurisprudence does not apply to this appeal.

5

Medical Questionnaire and mental health screening form. Additionally, paragraph 41 of the Amended Complaint alleges that Plaintiff and his brother-in-law told the deputies at the Jail that Ms. Short was suicidal and had recently attempted suicide. (App. p. 145). There can be no argument that, Sgt. Morgan knew Ms. Short was suicidal and failed to fill out the forms correctly and alert the QMHP, nurse, and other staff and oncoming shift as she should have.

Again, the summary judgment material, filed and sitting there ahead of the year-old 12(c) motion, overtly connects all of these dots with documents, answers under oath, and testimony. No questions remain. The admissible evidence exists and the District Court possesses it. Plaintiff is not suggesting that the District Court lacks discretion. But, to ignore the evidence and rely on stale pleadings is a miscarriage of justice. Form should not triumph over substance. In the spirit of justice and fairness, Plaintiff deserves to at least have the fully supported claims he presented be considered by a court, but in reality given the nature of the proof provided, by a Jury.

**Plaintiff Satisfied All 3 Prongs of Deliberate Indifference Test.**

A Jail official violates the civil rights of inmates when she displays "deliberate indifference to serious medical needs. To establish a claim of deliberate indifference to medical needs, the medical need must be both apparent and serious, and the denial of

6

attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). An officer is deliberately indifferent when she "knows of and disregards" the risk posed by the serious medical needs of the inmate. Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).

Sgt. Morgan knew about Ms. Short's obvious medical condition of suicide risk as seen in the medical questionnaire and mental health screening form. Ms. Short's medical condition was so obvious, that Sgt. Morgan's failure to properly fill the mental health screening form and refer Ms. Short was deliberate, or at least the favorable inference says that. At the end of the day, it is the ultimate question for the Jury. In the context of a jail suicide, "[i]ndifference is apathy or unconcern." Gordon v. Kidd, 971 F.2d 1087, 1095 (4th Cir. 1992). Sgt. Morgan's failure to take any action in response to the information she received is textbook indifference. This is exactly what this Court found as indifference when it affirmed the denial of the defendant's summary judgment in Kidd.

Defendants argue that "it is well established that local policies or rules (such as detention center guidelines or policies) do not affect or establish constitutional standards." (Defendants' Response Brief, Doc 27 p. 47). That is incorrect, the Fourth Circuit quoting the Supreme Court held that prison

7

regulations in combination with case law can be used to determine whether an individual had fair warning. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 546 (4th Cir. 2017). A breach of policy or protocol is relevant to whether an inmate, like Ms. Short's constitutional right was violated.

In the context of our case, that would be at worst a question for summary judgment or at best a jury question, but it certainly should not be addressed in a Rule 12 motion.

In Ms. Short's case, Sgt. Morgan knew Ms. Short exhibited suicidal risks, at least enough to be referred to the QMHP and handled pursuant to the Jail Policy 4.10. Despite her knowledge, she failed to do any of the many things she should have done. Plaintiff alleged that Sgt. Morgan knew that Ms. Short had signs and indications of a risk of suicide that required her to place Ms. Short on suicide watch, notify the QMHP and the nurse, and ensure the detainee was not give a bedsheet. (App. pp. 154, 165-169). Plaintiff alleged that Sgt. Morgan's actions violated Ms. Short's constitutional rights, why her actions violated Ms. Short's constitutional rights, and how that led to Ms. Short's death. (App. pp. 177-181). When all inferences are taken in Plaintiff's favor, that is more than adequate pleading.

Defendants erroneously claim that Plaintiff made no allegation that Sgt. Morgan recognized Ms. Short as suicidal. Defendants may wish that the trial court could infer that in their

8

favor, but that violates the Rule 12 standard of review. Indeed, Plaintiff goes into great detail in his Amended Complaint paragraphs 62-67 regarding Ms. Short's behavior and Sgt. Morgan's intake procedure. (App. pp. 151-154). Without question, Plaintiff alleged that Sgt. Morgan should have recognized and did recognize Ms. Short as suicidal. (App. pp. 153-154). The District Court erred in concluding otherwise.

When this Court accepts all well-plead allegations in Plaintiff's Amended Complaint as true and draws all inferences in his favor, it should reverse. The inferences based on the allegations in the Amended Complaint show that Sgt. Morgan: (1) knew Ms. Short was suicidal, (2) knew Ms. Short should have been referred to QMHP, (3) knew that Ms. Short should have been put on special watch, and (4) knew that Ms. Short should have been observed and treated as an inmate on suicide watch pursuant to the Jail's suicide watch policy. (App. pp. 1020-1021).

Sgt. Morgan noted that Ms. Short had recently attempted suicide. Yet, inexplicably, Sgt. Morgan did not fill out the important part of the mental health screening form to alert a nurse that Ms. Short needed evaluation by a QMHP. If Sgt. Morgan had completed that part of the mental health screening form, a nurse, a supervisor, or even Sgt. Morgan herself, should have immediately called a QMHP for mental health and suicide risk evaluation. Nobody did. Sgt. Morgan never told anyone about this positive screen on

9

the mental health screening form. (App. pp. 1396-1409). As a direct result, Ms. Short died alone in her cell.

**Overt Suicide Risk Is An Objectionable Serious Medical Need.**

Defendants state an "objectively serious medical need" must be "so obvious that even a lay person would easily recognize" it. This Court has recognized that a substantial risk of suicide is certainly the type of "serious harm" that is contemplated by the first prong of Farmer.[3] Cf. Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir.1992) Any lay person who can read and reads the Jail's Policy 4.10 would understand that the Jail's policy required Sgt. Morgan to consider Ms. Short as a potentially suicidal inmate. (App. pp. 227-229). Ms. Short admitted to a very recent suicide attempt. (App. pp. 221 and 225). Ms. Short appeared either intoxicated or going through withdrawals from drugs when Sgt. Morgan performed her intake screening. (App. p. 153). Two men notified Jail staff about Ms. Short's recent suicide attempt. (App. p. 145).

Sgt. Morgan has literally testified that she knew these facts on the night she did the intake. (App. pp. 1396-1413). Sgt. Morgan testified that she failed to properly fill out the mental health screening form and contact the QMHP and alert the nurse to initiate

---

[3] The first prong in the Farmer v. Brennan analysis is that a constitutional violation can occur only when the deprivation is objectively, sufficiently serious. A substantial risk of suicide is sufficient to satisfy this condition.

10

the suicide evaluation process. (App. pp. 1017-1021). Sgt. Morgan testified that she did not put Ms. Short on suicide watch or tell any of the staff that night or the next shift or management team about Ms. Short's overt risks of suicide. (App. p 1021). She blatantly disregarded the safety mechanisms that Policy 4.10 required her to take, any one of which would have prevented Ms. Short from committing suicide as she did. (App. pp. 1020-1021).

Policy 4.10 requires officers to proactively look for suicide risk factors and identify an at-risk inmate during intake. (App. pp. 227-229). Several other officers have confirmed this during their testimony, too. (App. pp. 1227-1244, 1268-1288, 1323-1335, 1364-1367, 1372-1374). This was not a new, unheard-of requirement that a lay person would not understand. Not only could any literate lay person pick up the policy, read it, and immediately understand it, but Sgt. Morgan testified that she had done just that prior to August 23, 2016. (App. pp. 1403 & 1429)-1413).

Defendants' attempt to classify Ms. Short's mental health, and her full disclosure of a previous suicide attempt as something other than a serious medical need flies in the face of 45 years of black letter Supreme Court precedent. In 1976, The Supreme Court applied the standard of "deliberate indifference" to serious psychological conditions of prisoners, such serious psychological conditions include suicide. Estelle v. Gamble, 429 U.S. at 104, 97 S. Ct. at 291.

11

It is well recognized in the Fourth Circuit that a substantial risk of suicide is certainly the type of "serious harm" that is contemplated by the first prong of Farmer. Brown v. Harris, 240 F.3d 383, 389 (4th Cir. 2001) quoting Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir.1992). The Court in Kidd establishes the "[t]he key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies." Kidd at 1094 quoting Elliott v. Cheshire County, 940 F.2d 7, 10–11 (1st Cir.1991).

It's clear Sgt. Morgan knew, or at the very least, should have known about Ms. Shorts suicidal tendencies. This Court should swiftly reject Defendants' invitation to defy existing, well-established Supreme Court precedent and overturn its own precedent.

**Other Medical Care At The Jail Does Not Excuse Sgt. Morgan's Acts.**

Defendants argue that because Ms. Short received some medical care at the Jail from a nurse at some point during her stay, Sgt. Morgan can escape liability for her own acts. Defendants essentially suggest that because the Jail outsourced medical care with nurses 12 hours a day, no Jail employee may ever face responsibility for their deliberate indifference when interacting with an inmate. That misstates the law. All jails and detention officers working at them throughout North Carolina have a non-

delegable, constitutionally mandated duty to provide adequate medical care to inmates in their custody.

The Jail chose to not have a full-time nurse or medical professional on the premises. The nurse only worked twelve-hours a day. The Jail had a twelve-hour gap in medical care provided by a nurse. When an inmate, such as Ms. Short, arrived at the Jail during the 12-hour gap with no nurse on site, the detention officers provided medical care at the Jail including mental health screening in the shoes of a nurse in her absence. Whenever a detention Officer does something medically or mental health related, that detention officer must do it in a constitutionally adequate manner the same as if a nurse did it.

If a detention officer becomes aware of information that should lead to a particular constitutionally-adequate, safe medical action (that a nurse would also take if the nurse was the medical care provider providing that care), the detention officer providing the medical care must take that action. Ms. Short spent approximately 12 hours in the Jail before a nurse saw her. Sgt. Morgan provided medical care and mental health screening before a nurse saw her. Sgt. Morgan failed to perform that duty in a constitutionally adequate, safe manner in spite of her knowledge of Ms. Short's risks of suicide and need for proper medical care. Sgt. Morgan should have taken, but did not, the obvious, policy-

13

required actions like placing Ms. Short on suicide watch, calling the QHMP and alerting the nurse and everyone else working at Jail.

Instead, Sgt. Morgan ignored the medical and mental health information that she had written on paper and reviewed. She knew all of this yet did nothing. That is literally deliberate indifference. A Jury can hold her responsible for that.

Sgt. Morgan made a deliberate choice to do nothing despite knowing facts that should have led her to specific actions. That choice was one of the causes in the chain of events that led to Ms. Short hanging herself with a bedsheet while in isolation with infrequent observation, and no medical staff or QMHP having ever been alerted about Ms. Short's suicide history and risks by Sgt. Morgan.

Defendants stated that "Federal courts faced with claims like the one here have noted that 'whether to place a prisoner on suicide watch and what level of precaution to take with an inmate are issues within a professional medical judgement.'" While Defendants cite cases from outside the Fourth Circuit, this argument defies logic. If Defendants actually believed their own argument, then they would dedicate a nurse 24 hours a day, every day of the week to properly assess and categorize incoming inmates for potential suicide risks. Their own actions belie this insincere argument. But, for what it is worth, maybe that should be the rule going forward: every jail must have properly trained medical

14

providers available at all times to safely evaluate, diagnose, and treat inmates with mental health issues to avoid preventable suicides.

Regardless, a detention officer like Sgt. Morgan can assess and classify inmates, but they must follow the safety rules to do it the constitutionally adequate way. Sgt. Morgan could have easily placed Ms. Short on suicide watch or alerted the QMHP, or a nurse, or even just told the other folks in the Jail and at shift change about Ms. Short's obvious, multiple suicide risks. She chose to do nothing. Knowing information about an inmate and what you should do to safely and adequately provide constitutionally adequate medical care to that inmate, but choosing to do nothing quite literally defines deliberate indifference.

This situation is like the one where this Court held that a prison guard cannot blame a medical provider's potentially also deliberately indifferent actions for her own deliberate indifference. In <u>Iko v. Shreve</u>, 535 F.3d 225, 242 (4th Cir. 2008) this Court held that detention officers faced liability for their own decisions in handling an inmate (<u>Iko</u>), instead of the belief that a prison official can rely on his medical staff's examinations and diagnosis. <u>Id.</u>

It is undisputed that Sgt. Morgan was the first line of defense at the Jail. There was no medical opinion to which Sgt. Morgan could have deferred, instead Sgt. Morgan with knowledge of

a very recent suicide, improperly classified and failed to notify the QMHP of Ms. Short's condition. This gross inaction by Sgt. Morgan sent Ms. Short down a path which led to her preventable death.

## CONCLUSION

Defendants' reliance on summary judgment or trial cases shows why the District Court erred in granting a stale Rule 12(c) motion. Leaving Plaintiff's valid, winning summary judgment arguments on the shelf to consider only this old motion would work a manifest injustice. Regardless, Plaintiff hurtled over the minimal hurdle of his pleading requirements, especially when inferences are properly drawn in his favor from the well pleaded allegations. This Court should reverse and allow Plaintiff to have his day in court.

Respectively submitted, this 13th day of October, 2021.

/s/ W. Ellis Boyle
W. Ellis Boyle
NCSB#: 33826
Knott & Boyle, PLLC
4800 Six Forks Road, Ste 100
Raleigh, NC  27609
Email: ellis@knottboyle.com
Telephone: (919)783-5900
Fax: (919) 783-9650
*Attorney for the Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this brief complies with Fed. R. App. P 32(a)(7) and Local Rule 32(b). Appellant is filing this electronically without serving any paper copies because the Fourth Circuit suspended the requirement of serving any paper copies of formal briefs and appendices pursuant to the current Public Advisory Regarding Operating Procedures in Response to COVID-19 issued by the Fourth Circuit on May 11, 2020.

This 13th day of October, 2021.

/s/ W. Ellis Boyle
W. Ellis Boyle

**CERTIFICATE OF SERVICE**

I have this day caused to be filed with the Clerk, United States Court of Appeals for the Fourth Circuit, the foregoing Reply Brief of Appellant electronically using the Court's CM/ECF system which will send notification of such to counsel below:

> James R. Morgan, Jr.
> Rudolf Garcia-Gallont
> Womble Bond Dickinson (US) LLP
> One West Fourth Street
> Winston-Salem, NC  27101
> Telephone: (336) 721-3710
> Facsimile:  (336) 733-8394
> Email:  jim.morgan@wbd-us.com
>         rolf.garcia-gallont@wbd-us.com
> *Attorneys for Defendants*

This 13th day of October, 2021.

/s/ W. Ellis Boyle
W. Ellis Boyle