**NOS. 21-1396, -1397**

# United States Court of Appeals
## *for the*
# Fourth Circuit

CHARLES WILLIS SHORT, individually and as Administrator of the Estate of VICTORIA CHRISTINE SHORT,

*Plaintiff-Appellant,*

– v. –

J. D. HARTMAN, Sheriff of Davie County, in his individual and official capacity; CAMERON SLOAN, Captain, Chief Jailer with the Davie County Sheriff's Department, in his individual and official capacity; DANA KELLY RECKTENWALD, Lieutenant, Operations Supervisor of the Detention Center with the Davie County Sheriff's Department, in her individual and official capacity; TERESA MORGAN, a/k/a Teresa M. Godbey, Sergeant, Jailer-Detention Officer with the Davie County Sheriff's Department, in her individual and official capacity; CRYSTAL COOK MEADOWS, Sergeant, Detention Officer with the Davie County Sheriff's Department, in her individual and official capacity; MATTHEW TRAVIS BOGER, Jailer-Detention Officer with the Davie County Sheriff's Department, in his individual and official capacity; JOHN OR JANE DOES 1-5, Jailers-Detention Officers with the Davie County Sheriff's Department, in their individual and official capacities; WESTERN SURETY COMPANY; ANDREW C. STOKES, Sheriff of Davie County, in his individual and official capacity,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO

### SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLANT

W. Ellis Boyle
Ward and Smith, P.A.
P.O. Box 33009
Raleigh, North Carolina 27636
(919) 277-9100
weboyle@wardandsmith.com

*Attorney for Plaintiff-Appellant*

CP COUNSEL PRESS     (800) 4-APPEAL • (809501)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

SUPPLEMENTAL ISSUES ...................................................................................... 1

ARGUMENT .............................................................................................................. 1

1. THE COURT SHOULD APPLY THE OBJECTIVE TEST ANNOUNCED BY THE SUPREME COURT IN *KINGSLEY V. HENDRICKSON* TO A PRE-TRIAL DETAINEE'S DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED CLAIM ............................ 1

2. THIS COURT NEED NOT REMAND FOR THE DISTRICT COURT TO ADDRESS WHETHER THE OBJECTIVE TEST IS MET IN THE FIRST INSTANCE .................................................................................. 7

3. THIS COURT SHOULD APPLY ITS RECENT DECISION IN *STEVENS V. HOLLER* TO REVERSE AND REMAND .................................. 9

CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Alderson v. Concordia Par. Corr. Facility*,
  848 F.3d 415 (5th Cir. 2017) ...................................................................................4

*Brawner v. Scott Cnty., Tennessee*,
  14 F.4th 585 (6th Cir. 2021) .....................................................................................4

*Castro v. Cnty. of L.A.*,
  833 F.3d 1060 (9th Cir. 2016) ..................................................................................4

*Dang ex rel. Dang v. Sheriff, Seminole Cnty.*,
  871 F.3d 1272 (11th Cir. 2017) ................................................................................4

*Darnell v. Pineiro*,
  849 F.3d 17 (2d Cir. 2017) .......................................................................................4

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ................................................................................7, 8

*Iko v. Shreve*,
  535 F.3d 225 (4th Cir. 2008) ..................................................................................11

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015)........................................................................................ *passim*

*Mays v. Sprinkle*,
  992 F.3d 295 (4th Cir. 2021) ................................................................................4, 8

*Miranda v. Cnty. of Lake*,
  900 F.3d 335 (7th Cir. 2018) ....................................................................................4

*Stevens v. Holler*,
  68 F.4th 921 (4th Cir. 2023) ............................................................................ *passim*

*Whitney v. City of St. Louis*,
  887 F.3d 857 (8th Cir. 2018) ....................................................................................4

**Statutes and Other Authorities:**

42 U.S.C. § 1983 ............................................................................................... 1, 2, 7, 9

Fed. R. Civ. P. 12(c)............................................................................................................8

## SUPPLEMENTAL ISSUES

(1) WHETHER THE PURELY OBJECTIVE TEST ANNOUNCED BY THE UNITED STATES SUPREME COURT IN *KINGSLEY V. HENDRICKSON*, 576 U.S. 389 (2015), APPLIES, AND IF SO,

(2) IF SO, WHETHER THE PROPER DISPOSITION OF THIS CASE IS TO REMAND FOR THE COURT BELOW TO ADDRESS, IN THE FIRST INSTANCE, WHETHER THE OBJECTIVE TEST IS MET.

(3) THIS COURT'S RECENT DECISION IN *STEVENS V. HOLLER*, 69 F.4TH 921 (4TH CIR. 2023).

## ARGUMENT

**1. THE COURT SHOULD APPLY THE OBJECTIVE TEST ANNOUNCED BY THE SUPREME COURT IN *KINGSLEY V. HENDRICKSON* TO A PRE-TRIAL DETAINEE'S DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED CLAIM.**

In *Kingsley v. Hendrickson*, the Supreme Court held that in a 42 U.S.C. § 1983 claim based on detention officer misconduct in a jail setting, a plaintiff-pre-trial detainee need not prove that the defendant-officer subjectively knew that her at-issue conduct was unreasonable. 576 U.S. 389 (2015). Instead, if the detainee proved that the officer was aware that she was engaging in the conduct, it does not matter if the officer actually intended that conduct to harm the detainee. Put differently, if the officer intentionally engaged in an act or omission, it does not matter what the officer was actually subjectively thinking about when she took that act or omission. So, a detainee need not prove that the officer subjectively knew that act or omission was

1

unreasonable and could cause, or worse actually intended to cause, the harm that resulted from that officer's act or omission.

As stated in *Kingsley*, the Objective Test requires only that a detainee plaintiff allege that an officer have subjective knowledge that the officer is making an act or omission. Once the plaintiff alleges that the officer knowingly acted, the jury should decide if that officer's intentional act or omission was objectively reasonable. *Id.* at 395. Put simply, a plaintiff need not prove, nor even allege, whether that officer believed, inside her mind, that she acted unreasonably or with intent to harm.

The procedural posture and type of § 1983 claim in *Kingsley* differs somewhat from this case, but those differences only strengthen the application of the Supreme Court's Objective Test here. First, the *Kingsley* case dealt with an excessive force claim as opposed to the deliberate indifference to a serious medical need claim found here. The reasoning supporting an objective standard for proving unreasonable conduct in the excessive force context is actually much less favorable than for an officer facing a deliberate indifference claim. Often times a detention officer engaged in an excessive force claim must act while weighing split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* at 399. Typically, that officer using force must act to protect herself or others, and seconds matter. It can be life or death decisions made during a brawl.

2

Conversely the at-issue conduct involved in a deliberate indifference claim, like in this case, typically allows the officer time to deliberate and evaluate the detainee without fear of escalating violence or threat to any staff members' or other detainees' safety. If the Objective Test applies in an excessive force claim where action must occur quickly amid rapidly changing uncertainty surrounding safety, it certainly should apply here when an officer calmly performs an intake interview with a sleepy detainee in the middle of the night with no other pressing concerns or dangers present. The officer in a deliberate indifference claim rarely has the excuse of surprise or emergency circumstances to justify her subjective thought process or perspective.

Thus, it makes more sense for the Supreme Court to require proof of unreasonable, subjective intent in the mind of the officer accused of excessive force who faces a dangerous emergency requiring quick reactions than in the mind of an officer accused of deliberate indifference. The officer accused of deliberate indifference has comparatively less stressful circumstances and more time to think. So, if the Objective Test applies in the excessive force context, it should apply even more so in the deliberate indifference context.

This Court has previously acknowledged that a commonsense extension of *Kingsley* from the excessive force setting to a deliberate indifference context may be warranted, but declined to directly address it because it was not relevant to the issues

3

on appeal in that case. *See Mays v. Sprinkle*, 992 F.3d 295, 300–01 (4th Cir. 2021). Indeed, the Second, Seventh, and Ninth Circuits have adopted a *Kingsley* Objective Test for deliberate indifference claims like this one. Those Circuits require a plaintiff detainee to prove that a reasonable officer would have recognized the serious medical condition and appreciated the risk without requiring proof of the subjective mindset of that defendant officer. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (*en banc*).[1] This Court should join the Second, Seventh, and Ninth Circuits to formally adopt the *Kingsley* Objective Test for pre-trial detainees' deliberate indifference claims.

Also, the district court in *Kingsley* had already conducted a trial, so the appeal focused on the jury instructions. The Supreme Court held that the district court's instructions improperly required the jury to decide if that plaintiff had proved the officers had unreasonable mindsets when they used force. *Id.* at 403. That case was much farther along than the posture presented in this case where the district court ruled on the pleadings. If a plaintiff need not prove the subjective mindset of the

---

[1] *But see, Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 & n.4 (5th Cir. 2017); *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 596 (6th Cir. 2021); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018); *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017).

4

officer at trial, he certainly should not need to do so in the pleadings. This further supports applying the Objective Test to the allegations here.

Applying it in this case, Plaintiff more than satisfied the Objective Test with his allegations against Sgt. Morgan in the Amended Complaint. Plaintiff alleged that Sgt. Morgan:

- filled out a medical questionnaire form for Ms. Short which informed her of Ms. Short's drug and alcohol issues, mental health issues, recent suicide attempts and related hospitalization, and other problematic medical issues; (JA 151-52)

- filled out a mental health or suicide evaluation form for Ms. Short which further informed her of Ms. Short's mental health issues and recent suicide attempts such that "Sgt. Morgan should have referred [Ms. Short] for further mental health evaluation. For some inexplicable reason, she did not;" (JA 152-53)

- continued her improper actions with the mental health or suicide evaluation form for Ms. Short when she "failed to check this box in spite of all of the earlier indications that Victoria was in fact under the influence of both drugs and alcohol… Sgt. Morgan either chose to not pay attention to this safety measure when she should have been doing her job, or even worse, she paid attention, but simply did not care, and chose to ignore the simple instructions. Either way, Sgt. Morgan's choice led to [Ms. Short's] death;" (JA 153-154)

- knew that Ms. Short had signs and indications of a risk of suicide that required her to place Ms. Short on suicide watch, notify a qualified mental health professional and a nurse and other officers and staff at the Jail, and ensure that the detainee is not given a bedsheet or put in isolation, but failed to take any of those actions; (JA 154, 165-169) and

- violated Ms. Short's constitutional rights by her acts and omissions, why her acts and omissions violated Ms. Short's constitutional

5

>rights, and how that led to Ms. Short's harm. Specifically, Plaintiff alleged that Sgt. Morgan failed to follow and execute the policies for suicide prevention, failed to comply with applicable law and code provisions, and failed to complete her assigned duties which led to Ms. Short's suicide. (JA 178-181)

Thus, the Court should find that Plaintiff sufficiently alleged that Sgt. Morgan had actual, subjective knowledge of Ms. Short's many risk factors for suicide. He showed this by the forms that Sgt. Morgan completed, recording information about Ms. Short's drug use, recent suicide attempt and ensuing hospitalization, and the overt appearance of either intoxication or withdrawal. Applying the Objective Test, Plaintiff did not need to allege anything more in the Amended Complaint to allege that Sgt. Morgan was actually aware of these things. Plaintiff did not need to allege that Sgt. Morgan understood the implications of these many suicide risk factors (which come straight from the Sheriff's suicide prevention policy or the mental health evaluation form) that she observed.

The district court erred in dismissing the claims against Sgt. Morgan holding that: "Deliberate indifference to a serious medical need requires an allegation showing that the defendant knew of the suicidal intent and its risk *yet responded in a way that she recognized was inappropriate*." (JA 1896)(emphasis added) The district court further erred in holding: "Likewise, 'an officer's failure to alleviate a significant risk *that she should have perceived but did not'* does not meet the deliberate indifference standard." (JA 1896)(emphasis added) In these rulings, the

6

district court misapplied the Objective Test to improperly require Plaintiff to include allegations about Sgt. Morgan's subjective mindset while she took overtly objectively inappropriate action in the screening and evaluation of Ms. Short. This Court can, and respectfully should, correct these errors by reversing the district court's incorrect application of the Objective Test and remand for further proceedings beyond the pleadings stage of the case.

2. **THIS COURT NEED NOT REMAND FOR THE DISTRICT COURT TO ADDRESS WHETHER THE OBJECTIVE TEST IS MET IN THE FIRST INSTANCE.**

This Court has the authority to consider this legal issue *de novo* and reverse the district court's decision without further consideration by the district court. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). A court should allow a claim to proceed so long as a plaintiff:

> pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged… The court must draw all reasonable inferences in favor of the plaintiff… Thereafter, the plausibility standard requires only that the complaint's factual allegations be enough to raise a right to relief above the speculative level.

*Stevens v. Holler*, 68 F.4th 921 (4th 2023)(citations omitted).

A district court should accommodate a plaintiff when considering a motion to dismiss a 42 U.S.C. § 1983 claim:

> When a court considers this type of motion testing the sufficiency of a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a

7

certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged."

*Edwards*, 178 F.3d at 244; *see also Mays*, 992 F.3d at 299–300. Thus, this Court can simply review the district court's order on the 12(c) Motion *de novo*, properly apply the Objective Test, and remand to proceed beyond the pleadings stage.

In *Kingsley*, after announcing its ruling on the Objective Test, the Supreme Court remanded for the court of appeals to consider whether its ruling would impact the defendants' argument that any jury instruction problems were harmless error. 576 U.S. at 403. Again, the particular procedural posture of that case led to the remand for further consideration of the Supreme Court's ruling. It is possible that, on remand, the appellate court, or even the district court, could have determined that these particular errors did not impact the jury's verdict. Certainly, in the context of jury instructions, harmless error can lead to a court accepting a verdict in the face of inconsequential legal error.

That does not apply here. No jury has heard evidence. The district court cannot point to a small fraction of the overall trial and aggregate jury instructions to suggest that the error in granting the 12(c) Motion was harmless. Indeed, that error was dispositive. On remand the case should progress to the next stage. While the Supreme Court appropriately remanded for reconsideration of the harmless error argument in the first instance in *Kingsley*, this Court should, respectfully, remand after *de novo* review and reversal with instruction for the district court to allow the case to proceed.

8

### 3. THIS COURT SHOULD APPLY ITS RECENT DECISION IN *STEVENS V. HOLLER* TO REVERSE AND REMAND.

Independently, this Court should, respectfully, apply its recent opinion in *Stevens* to reverse and remand for further proceedings. In *Stevens*, this Court reversed a district court's dismissal of a pre-trial detainee's § 1983 deliberate indifference to a serious medical need claim against seven jail medical staff. 68 F.4th at 925. The Court did not consider or discuss extending the *Kingsley* Objective Test to a deliberate indifference claim as discussed above. However, the facts from this case are similar to the facts from *Stevens* and should lead to the same result: reverse and remand for further proceedings.

In *Stevens*, the detainee arrived at jail with several obvious health related risk factors and pre-existing conditions. *Id.* at 925. The seven defendants interacted with the detainee over the course of several days and documented several instances of health issues showing that the defendants were actually aware of the detainee's health problems, but basically did not adequately address those. *Id.* at 926-29. Significantly, the Court did not release any defendants who interacted with the detainee on day one or two of the jail custody based on the conduct of defendants who interacted with him on day three or four. Instead, the Court:

> rejected the notion that simply because medical staff have provided an inmate with *some* treatment that they have necessarily provided [the inmate] with *constitutionally adequate* treatment… Rather, the treatment a prison facility [provides] must ... be adequate to address the prisoner's serious medical need… government officials who ignore

9

> indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs.

*Id.* at 933 (internal citations omitted)(emphasis in original). The Court relied upon the detainee's allegations that the defendants violated at least three protocols which demonstrated that they "knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Id.* at 932-33.

The similarities between this case and *Stevens* line up almost directly as it relates to Plaintiff's claims against Sgt. Morgan from the Amended Complaint. Plaintiff alleged that Sgt. Morgan knew about the Sheriff's Suicide Policy and how to properly complete the intake evaluation forms. Plaintiff alleged that Sgt. Morgan actually became aware of Ms. Short's multiple risks of suicide as she wrote down information on those forms about Ms. Short. Plaintiff alleged that anyone who is aware of the Policy and can read the instructions on the forms must have known that Ms. Short had several overt risks of suicide that required implementation of the Sheriff's Suicide Policy. Plaintiff alleged that Sgt. Morgan's independent failure to place Ms. Short on suicide watch, to notify a qualified mental health provider or any medical staff or at least the other jail employees, and to place her on suicide watch and ensure that she did not receive items she could use to commit suicide in isolation

10

all constituted constitutionally inadequate treatment in the face of overt and known serious medical need. (JA 151-54, 165-69, 178-81)

Those are all Sgt. Morgan's actions, and she bears responsibility for them regardless of what may have happened later. Even if other medical providers may have also provided constitutionally inadequate medical care to Ms. Short after Sgt. Morgan's violations, that does not absolve Sgt. Morgan any more than it did for the defendants who initially interacted with the *Stevens* detainee when other defendants also provided inadequate medical care to him a few days later. If Sgt. Morgan had done her job the right way and properly identified and publicized Ms. Short's obvious suicide risk based on the forms and policies of which Sgt. Morgan unquestionably knew about, many other resources could have been brought to Ms. Short's aid which almost certainly would have precluded this preventable tragedy.

Plaintiff alleged that Sgt. Morgan failed to follow and execute the policies for suicide prevention and failed to comply with applicable law and code provisions. (JA 178-181) According to *Stevens*, violations of policies related to a detainee's medical care that a government official knows or should know about can support a claim for deliberate indifference. *See also, Iko v. Shreve*, 535 F.3d 225, 242–43 (4th Cir. 2008). Applying *Stevens* and viewing the facts in a light most favorable to Plaintiff, the Court should hold that a jury could find that Sgt. Morgan acted with deliberate indifference to Ms. Short's serious medical need when she violated these

11

minimal requirements in the policies, forms, and the law, without regard to other defendants' violations.

Essentially, application of the facts and holdings from *Stevens* to the district court's judgment on the pleadings here strongly supports reversing that decision and remanding for further proceedings beyond the pleadings phase. Just as this Court held in *Stevens* that the district court's decision to dismiss the *Monell* claim and state law claims based on the dismissal of the underlying deliberate indifference claim should also be reversed, this Court should reinstate Plaintiff's the *Monell* claim and state law claims on remand. *Stevens*, 68 F.4th at 933-34.

## CONCLUSION

The district court erred in granting Defendants' Motion for Judgment on the Pleadings. The allegations in the Amended Complaint support a plausible claim that Sgt. Morgan was deliberately indifferent to Ms. Short's serious medical needs, especially when the Court applies either the *Kingsley* Objective Test or *Stevens*. Plaintiff respectfully requests that this Court reverse and remand for further proceedings for all claims against all remaining Defendants.

Respectfully submitted, this 7th day of September 2023.

>  */s W. Ellis Boyle*
> W. Ellis Boyle
> N.C. State Bar I.D. No. 33826
> email: docket@wardandsmith.com
> email: weboyle@wardandsmith.com
> WARD AND SMITH, P.A.
> Post Office Box 33009
> Raleigh, NC 27607
> Telephone: (919) 277-9100
> Fax: (919) 277-9177

13

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
Effective 12/01/2016

No. __21-1396__     Caption: __Charles Short v. J. Hartman__

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains __2,999__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
__MS Word_____ [*identify word processing program*] in
__Times New Roman, 14 pt.__ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) __W. Ellis Boyle__

Party Name __Appellant__

Dated: __9/7/2023__

11/14/2016  SCC